IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA : CRIMINAL ACTION
:
v. : No. 1:10-CR-86-RWS-ECS
:
:
OMAR CUBILLOS, AND :
CARLOS MENDOZA :
:

**REPORT AND RECOMMENDATION**

**I.**
**Introduction**

This matter is before the Court on the motions to suppress evidence filed by Defendants Cubillos and Mendoza, [Docs. 347, 348], and motion to suppress statements filed by Cubillos. [Doc. 391]. The motions came on for evidentiary hearing on October 13, 2011. The transcript has been filed[1] [Doc. 615], the Defendants have briefed the motions, [Docs. 626, 645], and the Government has responded in opposition, [Doc. 669]. Defendants were permitted time to file reply briefs, but neither Defendant filed a reply to the Government's response.

The motions to suppress evidence and statements all relate to a traffic stop that occurred on April 21, 2007, in the early morning hours in Gwinnett County. Defendants contend that there was no

---

[1] References to the transcript of the evidentiary hearing conducted on October 13, 2011, will be indicated as: [T. pg.]

probable cause or reasonable suspicion for the traffic stop because of a mistake of law by the arresting officer. Defendants alternatively contend that the impoundment and inventory of the vehicle that followed the stop and led to the seizure of two firearms and some ammunition was unreasonably conducted in violation of the Fourth Amendment.

## II.
## The Facts

In the early morning hours of April 21, 2007, Detective David Martinez of the Gwinnett County Police Department was on his regular patrol in a marked patrol car. [T. 21]. At around four o'clock in the morning, he observed a black Chevy Camaro driving southbound on Singleton Road near Thompson Parkway in Norcross, Gwinnett County. [T. 8]. He pulled the vehicle over to the side of the road because there was no license tag light on the vehicle in violation of Georgia law. [T. 8, 22, 43-44, 70]. The vehicle had a Georgia license plate, but it also had a paper tag that said "Tag Applied For" in the back window. [T. 9, 24]. Officer Martinez called in the Georgia license tag and received a response that the showed the tag was issued to a green Ford Taurus. [T. 10, 23].

After receiving this information, Officer Martinez approached the vehicle on the passenger side. [T. 8, 10]. As he approached he determined that there were two people inside. [T. 10]. When he

2

arrived at the window on the passenger side he could smell a strong odor of alcohol. [T. 11, 31-32]. He informed the driver why he had stopped him and asked for his driver's license. [T. 24]. The driver, who identified himself as Omar Cubillos, said he did not have his license with him. [T. 11, 24]. When asked who owned the car, he told the officer it belonged to a friend. [T. 11, 30]. A license check ultimately showed that Defendant Cubillos had been issued a valid driver's license. [T. 24-25].

While this questioning was going on, the passenger, identified as Defendant Carlos Mendoza, was acting nervous, fiddling with a CD case and poking at the radio. [T. 12, 26]. Because of the alcohol smell, Officer Martinez decided to do a field sobriety test on the driver. [T. 13]. He waited for backup and Officers Parker and Lymber showed up within a few minutes. [T. 13, 80, 88]. The field sobriety test did not indicate that Defendant Cubillos was intoxicated. [T. 15, 34].

When Officer Martinez ran the vehicle identification number ("VIN") on the vehicle, it came back as a black Chevrolet Camaro with no insurance and a canceled registration. [T. 12-13]. This meant that there was no tag assigned to the vehicle. [T. 29]. During this time, Officer Parker, who was stationed near the passenger, reported that Mr. Mendoza continued to poke at or touch the car radio, which

3

appeared to be loose and improperly installed in the dashboard. [T. 15, 56-57].

Because the vehicle lacked an active registration and was not insured, Officer Martinez made the decision to impound the vehicle. [T. 15, 32, 45]. Defendants were not under arrest at this time. [T. 33]. In Officer Martinez' opinion, an uninsured vehicle could not be legally driven on the roads of Georgia and must be impounded, unless he in his discretion allowed the vehicle to be towed away by its owner. [T. 15, 50, 68, 76-77].

Once the vehicle was impounded, under Gwinnett County policy an inventory was required for the protection of both the police and the owner of the vehicle. [T. 82]. Officer Parker testified that the inventory of the Camaro was done in accordance with Gwinnett policy.[2] [T. 82-83]. In conducting the inventory, Officer Parker found two loaded pistols, a Smith & Wesson .32 caliber under the drivers seat and a H & R .22 caliber hidden behind the car radio/stereo that the officers had noticed Mr. Mendoza fiddling with. [T. 16, 58, 84]. When the weapons were found, both occupants of the vehicle were quickly "taken down" and handcuffed. [T. 16]. A pat-down of Defendant Cubillos's person led to the discovery of .32 caliber ammunition in his pocket. [T. 17].

---

[2] A copy of the policy was introduced into evidence as Government Exhibit 1.

Defendant Cubillos at some point was determined to be a felon and was charged with being a felon in possession of a firearm. [T. 67]. Defendant Mendoza was arrested for possession of a concealed weapon. [T. 68]. Neither of the Defendants made any statements that the Government intends to introduce into evidence. [T. 92].

### III.
### Discussion

**A. Did Officer Martinez have probable cause or reasonable suspicion to stop the Chevy Camaro on April 21, 2007?**

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure takes place "[w]henever a police officer accosts an individual and restrains his freedom to walk away." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975) (quoting Terry v. Ohio, 392 U.S. 1, 16 (1968)). Traffic stops qualify as seizures under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979).

Law enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion, based on objective facts, that the person has engaged, or is about to engage, in criminal activity. Terry, 392 U.S. at 1, 20-21, 29. The "reasonable suspicion" must be more than an "inchoate unparticularized suspicion or 'hunch,'" id. at 27, and the officer must have "some minimal level of objective justification" taken from the totality of

5

the circumstances.  United States v. Sokolow, 490 U.S. 1, 7-8 (1989)(quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)).  "In justifying such an intrusion, the 'reasonableness' standard requires that a police officer 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"  United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999)(quoting Terry, 392 U.S. at 21).

The principles enunciated in Terry apply to traffic stops. United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez, 449 U.S. 411, 417 (1981); United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2002).  Accordingly, the police may make a stop if they have reasonable suspicion or probable cause to believe that a traffic violation has occurred.  Illinois v. Wardlaw, 528 U.S. 119, 123 (2000); Whren v. United States, 517 U.S. 806, 810 (1996); see United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (involving a lane change violation).  "Reasonable suspicion" is a less demanding standard than probable cause and requires considerably less than a preponderance of the evidence.  Sokolow, 490 U.S. at 7.

O.C.G.A. § 40-8-23(d) provides that "[e]ither a taillight or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear."  In this case, Officer Martinez stopped the black Chevy Camaro "because there was no

6

tag light on the vehicle," explaining that "state law requires that the vehicle be equipped with a tag light and it has to be seen from fifty feet away." [T. 8]. Based upon this record and testimony there is no question that Officer Martinez had probable cause upon which to stop the Camaro for this perceived violation of Georgia law.

Defendants seem to argue that Officer Martinez could not cite Defendant for a violation for O.C.G.A. § 40-8-23 because the vehicle also had a temporary paper tag in the window that Officer Martinez could see and read. See Def's Briefs, [Doc. 645, at 2], [Doc. 626, at 7]. From this proposition Defendant concludes that Officer Martinez was mistaken about the applicable law. But Defendant cites no authority whatsoever for the proposition that a temporary paper tag displayed in a rear window excuses a violation of the tag light requirements of the Georgia Code. Indeed, Defendants fail to address the fact that the license tag not only was insufficiently lighted, but the vehicle was actually bearing a license plate that did not correspond with the vehicle, and was registered to another vehicle entirely, also in violation of Georgia law. See O.C.G.A. § 40-2-5(a)(3) & (4).[3]

---

[3] O.C.G.A. § 40-2-5(a) provides:
(a) Except as otherwise provided in this chapter, it shall be unlawful:
....
    (3) To buy, receive, use, or possess for use on a motor vehicle any license plate not issued for use on such motor

7

There was no mistake of law. Georgia law requires a white light that illuminates the rear registration plate so that it can be seen from a distance of 50 feet. Defendant's vehicle failed to comply with this statute. Officer Martinez clearly was authorized by probable cause and reasonable suspicion to make the stop of the Camaro for this apparent violation of Georgia law. Defendants' arguments based on the paper tag and mistake of law are without merit.

**B. Was it lawful under the Fourth Amendment to impound the vehicle and conduct an inventory search?**

After lawfully taking custody of a vehicle, the police may conduct a warrantless search of the vehicle in the nature of an inventory in order to further three distinct purposes: (1) to protect the owner's property while it is in police custody; (2) to protect the police against claims of lost, stolen or vandalized property; and (3) to protect the police from potential danger. Florida v. Wells, 495 U.S. 1, 4 (1990); Colorado v. Bertine, 479 U.S. 367, 372 (1987); Illinois v. Lafayette, 462 U.S. 640, 646 (1983). Police may not, however, conduct an inventory search in bad faith or solely for investigatory purposes. An inventory search must not be a ruse for general rummaging in order to discover incriminating evidence. Wells,

---

vehicle; or
(4) To operate a motor vehicle bearing a license plate which was improperly removed or transferred from another vehicle.

8

495 U.S. at 4. An inventory search must be conducted according to standardized criteria. Id.; United States v. Khoury, 901 F.2d 948, 958 (11th Cir. 1990). Thus, "a law enforcement officer may impound [a] vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Sammons v. Taylor, 967 F.2d 1533, 1543 (11th Cir. 1992) (quotation omitted). Contraband discovered in the course of a valid inventory search may be seized by the police. Bertine, 479 U.S. at 376; Lafayette, 462 U.S. at 648; South Dakota v. Opperman, 428 U.S. 364, 376 (1976).

Defendants argue that the inventory search of the Camaro after impoundment was illegal because it was based upon the officer's erroneous assumption that impoundment was mandatory in these circumstances. See Def's Brief, [Doc. 626, at 10]. Defendants also argue that the impoundment was illegal because Officer Martinez did not offer Defendant Cubillos any alternatives to impound, [Doc. 645, at 10]. These arguments are without merit. The evidence shows that Officer Martinez acted consistently with Gwinnett County procedure in determining that impoundment was reasonable under the circumstances. See Gov't Ex. 1, ¶ 427.03. He determined that under Georgia law the vehicle could not be driven because it was not in compliance with Georgia law regarding mandatory liability insurance.

Indeed, O.C.G.A. § § 33-34-4 provides as follows:

9

> No owner of a motor vehicle required to be registered in this state or any other person, other than a self-insurer as defined in this chapter, shall operate or authorize any other person to operate the motor vehicle unless the owner has motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under Chapter 9 of Title 40, the 'Motor Vehicle Safety Responsibility Act.'

See State v. Howard, 264 Ga. App. 691, 693 (2003) (Noting, in upholding impoundment, that "no one would argue that uninsured motor vehicles should be allowed to travel the roadways."); see also O.C.G.A. § 40-6-206(d) (providing for removal of vehicle of persons charged with no proof of insurance where person admits no insurance or police verify that proof fraudulent).

O.C.C.A. § 33-34-4, quoted above, would appear to validate Officer Martinez's judgment that he should not have allowed Defendant Cubillos, who did not have a license in his possession, or Defendant Mendoza, whose driving status was unknown, to drive this uninsured and unregistered vehicle away from the scene. It was also reasonable under the Gwinnett policy not to offer Defendant Cubillos any other alternatives to impoundment. All of the alternatives in the Gwinnett policy cited by Defendant are dependent upon "the arrestee/owner express[ing] a desire" for an alternative other than impoundment. See Gov't Ex. 1, ¶ 427.03. Defendant never expressed any desire for an alternative to impoundment.

10

Further, it was not unreasonable for the officer not to attempt to contact the owner. The owner was unidentified and unregistered; it was approximately four thirty in the morning. Finding the owner at that time of night would have been unlikely, and arranging another tow service would have undoubtedly caused significant delay. See United States v. Crawford, 294 F. App'x 466, 473 (11th Cir. 2008) (decision to impound without finding another driver not unreasonable). And, in addition, the vehicle bore a license plate issued to another vehicle, also in violation of Georgia law.

Under these circumstances, Officer Martinez acted reasonably in impounding the vehicle without contacting the owner or offering other alternatives. His decision appears to have been made in good faith, was based upon standard criteria, and not solely based upon "suspicion of evidence of criminal activity." Sammons, 967 F.2d at 1543.

## IV.
### Conclusion

In conclusion, the motions to suppress evidence, [Docs. 347, 348], should be **DENIED**. The motion to suppress statements, [Doc. 391], is also **DENIED**, because it is **MOOT**.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned as to these defendants, it is

11

therefore **ORDERED** that these defendants be and are hereby **CERTIFIED** as ready for trial.[4]

**SO REPORTED AND RECOMMENDED**, this 20th day of March, 2012.

/s/ *E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

---

[4]This Court observes that these defendants have been indicted with additional defendants and that matters pertaining to such co-defendants are still pending. Pursuant to 18 U.S.C. §3161 (h)(7) (the Speedy Trial Act), the time for commencing the trial of these defendants may be stayed until such time as all defendants have been certified ready for trial. Hence, it is not necessary to place the above-named defendant's case on the calendar for trial at this time

AO 72A
(Rev.8/82)